IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| MICHAEL KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 22-cv-2190 |
| | ) | |
| NEXAIR, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

This is a personal injury case. Before the Court is Defendant NEXAIR, LLC's ("nexAir") June 26, 2023 Motion for Partial Summary Judgment. (ECF No. 50.) Plaintiff Michael Kelly responded on July 31, 2023, and Defendant replied on August 14. 2023. (ECF Nos. 66, 87.) For the following reasons, the Motion is GRANTED.

### I. Background

At the time of the accident central to this case, Plaintiff worked as a courier, picking up and delivering packages around Memphis, Tennessee. (ECF No. 66-2 at PageID 785-86.) Among other places, Plaintiff would frequently stop at Defendant's warehouse. (ECF No. 66-2 at PageID 785-86.) Defendant is in the business of selling gas-related products, such as liquid nitrogen and dry ice. (ECF No. 63 at 23:13-20.)  Plaintiff had visited

Defendant's warehouse about five times a week for several months before the accident. (ECF No. 66-2 at PageID 786.) At the warehouse, Plaintiff would usually pick up dry ice for delivery elsewhere in town. (Id.)

On September 20, 2018, the day of the incident, Plaintiff arrived at the warehouse early in the morning and parked at the back, as he usually did. (Id. at PageID 787; ECF No. 50-1 at 55:3-12; see ECF No. 63-1 at Exs. 4, 10.) At the back of the warehouse are two receiving doors large enough to admit forklifts and pallets of freight. (ECF No. 63 at 50:14-20; No. 63-1 at Ex. 5.) Hanging in the receiving doors are slats of plastic. (ECF No. 63 at 51:22-52:3; No. 63-1 at Exs. 3, 5, 7.) The plastic slats serve to regulate the temperature of the warehouse while allowing forklifts or other objects to pass easily through the receiving doors. (ECF No. 63 at 52:4-16.) The slats are at least partly transparent, although it is not clear to what degree they could be seen through on the day of the accident. (Id. at 64:10-65:12; ECF No. 50-1 at 65:23-66:3.) Immediately to the right of the two receiving doors is a regular-sized door for the passage of people. (ECF No. 63 at 50:21-23; No. 63-1 at Ex. 5.) The three doors open onto a loading dock that is elevated above the lot on which Plaintiff parked. (ECF No. 61 at 61:9-12; No. 63-1 at Ex. 5.) Leading up to the dock are a large ramp, placed in front of one of the receiving doors and on which a forklift

2

might drive, and a set of stairs to the side, near the smaller door. (ECF No. 63 at 54:3-14, 55:19-56:4; No. 63-1 at Exs. 4, 8.)

After parking, Plaintiff walked up the ramp and through one of the receiving doors, as he normally did. (ECF No. 50-1 at 58:2-18, 60:17-61:8.) Plaintiff learned that his shipment of dry ice was not ready and left to go to another building to see whether there were any other packages he needed to pick up. (Id. at 61:6-8.) Plaintiff found that the door to the other building was locked, so he began walking up the ramp leading to the first building. (Id. at 61:8-12.) Plaintiff then had an accident with a forklift that led to his being injured. The parties disagree as to what happened.

According to Cody Frazier, Defendant's employee who was driving the forklift, he was inside the warehouse backing the forklift very slowly toward one of the receiving doors. (ECF No. 63 at 75:25-77:14.) Just as the back of the forklift touched the plastic slats hanging in the doorway, Frazier heard a shout and stopped the forklift immediately. (Id. at 77:15-22.) Frazier did not see anyone before the shout or immediately after, but after dismounting, he saw that Plaintiff had fallen from the loading dock onto the pavement below. (Id. at 77:15-22, 79:7-80:17, 81:4-8.) Plaintiff was conscious and yelling. (Id. at 79:7-12.)

When Frazier went to help him, Plaintiff told Frazier not to touch him and that his arm hurt. (Id.)

Plaintiff's story is different. Plaintiff says that he knew that forklifts sometimes came in and out of the receiving doors, so he went and stood near the wall immediately to the right of the receiving door. (ECF No. 50-1 at 62:23-63:8, 65:18-22.) Plaintiff began to move his head into the doorway to call to the warehouse staff to let them know that he was there. (Id. at 63:3-8.) At that moment, Defendant was struck in the head. (Id.) Defendant lost consciousness, and the next thing he remembers is waking up on a stretcher as he was about to be loaded into an ambulance. (Id. at 63:6-24.) Plaintiff alleges that the forklift struck him and knocked him off the loading dock. (ECF No. 66-2 at PageID 787.) In his pleadings, Plaintiff has also argued in the alternative that he was nearly struck and fell off the dock as a result. (Id.)

There is no dispute that Plaintiff suffered a fractured right clavicle and scapula during the accident with the forklift. (Id. at PageID 790.) Plaintiff also contends that he suffered a traumatic brain injury, although Defendant raises doubts on that point and contends that Plaintiff first visited a neurologist in 2022, years after he was injured. (Id. at PageID 788-89.) Plaintiff has incurred slightly less than $26,000 in medical bills because of the accident. (Id. at PageID 790.)

4

Plaintiff initially sued in state court in 2019. (Id. at PageID 787-88.) He voluntarily dismissed the case and filed suit here in 2022. (Id.) Defendant now moves for partial summary judgment on Plaintiff's claim for punitive damages, arguing that no reasonable jury could find that Defendant acted recklessly, as required to award punitive damages. (ECF No. 52 at PageID 569.)

## II. Jurisdiction and Choice of Law

Plaintiff is a citizen of Arkansas. (ECF No. 24 at ¶ 3; No. 27 at ¶ 3.) Defendant is a limited liability company with members who are all citizens of states other than Arkansas. (ECF No. 24 at ¶ 4; No. 27 at ¶ 4; No. 17.) Plaintiff seeks $2 million in compensatory damages. (ECF No. 24 at ¶ 2.) This Court has diversity jurisdiction under 28 U.S.C. § 1332.

State substantive law applies to state law claims brought in federal court. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a choice of law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties agree in their summary judgment briefing that Tennessee law applies to Plaintiff's claims for negligence and punitive damages. (ECF No. 52 at PageID 573; No. 66-1 at PageID 778.) The Court will apply Tennessee substantive law.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can meet this burden by showing that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case. Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). "[I]n order to survive a summary-judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A scintilla

of evidence favoring the nonmoving party does not establish a genuine issue of material fact. Id.

The nonmoving party must point to concrete evidence on which a reasonable juror could return a verdict in its favor; a district court will not "wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989); accord Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Audi AG v. D'Amato, 469 F.3d 534, 545 (6th Cir. 2006). Courts will not, however, make strained or unreasonable inferences. Id.

In considering a motion for summary judgment, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Thus, where a party would have the obligation to prove some fact by clear and convincing evidence at trial, the summary judgment question is whether a reasonable jury could find that that fact has been proven by clear and convincing evidence. Id. at 255-56. If a reasonable jury could find in favor of either side, summary judgment must

be denied; if the jury could draw only the conclusion favorable to the movant, summary judgment should be granted. Id.

Although summary judgment must be used carefully, it "is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

**IV. Analysis**

The availability of punitive damages on a state law claim is a substantive issue governed by state law. See Grant v. Kia Motors Corp., 185 F. Supp. 3d 1033, 1049-52 (E.D. Tenn. 2016) (deciding issue under state law). In Tennessee, punitive damages may be awarded only "if the claimant proves by clear and convincing evidence that the defendant . . . acted maliciously, intentionally, fraudulently or recklessly." Tenn. Code Ann. § 29-39-104.

Under the clear and convincing evidence standard, the plaintiff must show that there is "no serious or substantial doubt about the correctness of the conclusions drawn." Goff v. Elmo Greer & Sons Constr. Co., 297 S.W.3d 175, 187 (Tenn. 2009) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). In other words, the evidence must show that the

truth of the pertinent conclusion is "highly probable." Id. (quoting Teter v. Republic Parking Sys., Inc., 181 S.W.3d 330, 341 (Tenn. 2005)).

There has been no argument that Defendant acted maliciously -- that is, in a way motivated by "ill will, hatred, or personal spite" -- or fraudulently. Hodges, 833 S.W.2d at 901; see ECF No. 66-1. Plaintiff does not argue that Defendant's conduct was intentional, such that Defendant intended to injure him. (ECF No. 66-1.) The question is therefore whether Defendant acted recklessly.

"A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." Hodges, 833 S.W.2d at 901. The burden of showing recklessness is a substantial one. In Tennessee, punitive damages are "punishment for serious moral dereliction" and should be invoked "in 'cases involving only the most egregious wrongs.'" Cappello v. Duncan Aircraft Sales of Fla., Inc., 79 F.3d 1465, 1474 (6th Cir. 1996) (quoting Hodges, 833 S.W.2d at 901). Gross negligence is not sufficient. Id. Recklessness is characterized by both a major deviation from the standard of care an ordinary, prudent person would observe, and also by knowledge of the high degree of risk posed by the actor's

9

conduct. John Doe 1 ex rel. Jane Doe 1 v. Roman Cath. Diocese, 154 S.W.3d 22, 38 (Tenn. 2005) ("Recklessness 'entails a mental element that is not necessarily required to establish gross negligence.'" (quoting Dan B. Dobbs, The Law of Torts 351 (2001))). The reckless actor "intentionally or consciously runs a very serious risk with no good reason to do so." Id. (quoting Dobbs, supra, at 351).

Defendant is entitled to partial summary judgment because no reasonable jury could find, by clear and convincing evidence, that Defendant or its employee acted recklessly in injuring Plaintiff. According to Plaintiff's version of events, Plaintiff placed himself directly to the side of one of the receiving doors, extended his head into the opening to warn of his presence, and was immediately struck. (ECF No. 50-1 at 62:23-63:8.) In Plaintiff's telling, Defendant's employee would have had little opportunity to see Plaintiff beforehand or to forestall a collision because Plaintiff was standing to the side of the doorway until immediately before the accident. In any event, ordinary inattentiveness or inadvertence in operating a vehicle does not amount to recklessness. Young v. GLM Transp., Inc., No. 1:18-CV-147-SKL, 2019 U.S. Dist. LEXIS 243323, at *32-33 (E.D. Tenn. Nov. 1, 2019) (granting summary judgment on punitive damages claim because facts showed only "simple lack of alertness, inattention, or omissions"); see Parker v. CSX

10

Transp., Inc., No. 17-2262-STA-egb, 2017 U.S. Dist. LEXIS 190257, at *2-3, *19 (W.D. Tenn. Nov. 17, 2017) (finding no recklessness where train crew mistook plaintiff lying on tracks for a log and failed to apply the brakes until just before the accident). Compare Anderson v. U.S.A. Truck, Inc., No. W2006-01967-COA-R3-CV, 2008 Tenn. App. LEXIS 590, at *6-7, *40-41 (Ct. App. Oct. 1, 2008) (holding driver's negligent failure to see other vehicle or stop in time was not reckless), with Perry v. Dewey, No. 02A01-9406-CV-00142, 1995 Tenn. App. LEXIS 475, at *8 (Ct. App. July 18, 1995) (holding recklessness was a jury question where defendant was driving drunk).

Plaintiff is correct that Defendant could have taken additional safety measures. Defendant could have required couriers to use the nearby stairs and regular door, put up warning signs, or established segregated lanes for forklift and pedestrian traffic. (See ECF No. 66-1 at PageID 780-81.) Those putative shortcomings, however, support ordinary negligence, not recklessness. See Waterhouse v. Tenn. Valley Auth., 475 F. Supp. 3d 817, 826-27 (E.D. Tenn. 2020) (holding landowner's failure to warn of or remedy hole in the ground that injured plaintiff did not rise even to the level of gross negligence); Marshall v. Cintas Corp., 255 S.W.3d 60, 76 (Tenn. Ct. App. 2007) (affirming dismissal of punitive damages claim where driver was allegedly inadequately trained for a delivery route "not carefully

11

mapped"). Even assuming that Defendant's employee, Frazier, were driving too fast,[1] there is no indication in the record that Frazier or Defendant committed a "gross deviation" from the standard of care. <u>Hodges</u>, 833 S.W.2d at 901. Plaintiff has failed to establish a genuine dispute of material fact about whether Defendant's conduct was reckless.

Considering the mental component of recklessness, Plaintiff has failed to establish a genuine dispute of material fact about whether Defendant was aware of a grave risk caused by its conduct. Plaintiff has shown that Defendant knew that couriers and other third parties came into the warehouse through the receiving doors. (ECF No. 66-1 at PageID 781; No. 63 at 67:18-23.) Plaintiff has also shown that Defendant anticipated third-party traffic in the warehouse that day and knew that operating forklifts could be dangerous. (ECF No. 66-1 at PageID 779-81; No. 63 at 97:20-25; No. 50-4 at 10-11.) Although Plaintiff has thus established that Defendant knew of some level of risk, recklessness requires more. Plaintiff has not shown that Defendant knew of a "substantial and unjustifiable risk" of such character and gravity that "its disregard constitutes a gross deviation from the standard of care." <u>Roman Cath. Diocese</u>,

---

[1] Plaintiff points out that Frazier did not know the top speed of the forklift he was driving. (ECF No. 66-1 at PageID 780; No. 63 at 39:14-17.) Plaintiff does not, however, identify any evidence showing how fast Frazier was actually driving. (ECF No. 66-1 at PageID 780.)

154 S.W.3d at 39. The risks about which Defendant knew are not extraordinary risks, but the everyday risks of a workplace in which people and machines work in close proximity.

The result is the same under the alternative version of the facts. Assuming that Plaintiff was nearly struck (and not actually struck) by the forklift, causing him to fall off the loading dock, see ECF No. 66-2 at PageID 787, he has failed to show that Defendant acted recklessly. Even if Frazier had adequate opportunity to see Plaintiff and negligently failed to stop soon enough to avoid startling him, that Plaintiff was not struck supports the conclusion that Frazier was not operating the forklift recklessly. For the reasons discussed, Defendant's failure to establish separate lanes for foot traffic and forklifts and to put up signage requiring couriers to use the pedestrian door was negligent at worst and not reckless.

No reasonable jury could conclude, on the basis of the evidence available and by clear and convincing evidence, that Defendant acted recklessly in injuring Plaintiff. Punitive damages are unavailable under Tennessee law.

## V. Conclusion

Because there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law, the Motion for Partial Summary Judgment, ECF No. 50, is GRANTED. Plaintiff's

claim for punitive damages is DISMISSED. Plaintiff's remaining claim for negligence will proceed to trial.

SO ORDERED this 15th day of August, 2023.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE