```
         IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```

|  |  |
|---|---|
| **MICHAEL KELLY,** )  )  | |
| Plaintiff, ) ) ) | |
| v. ) ) | No. 22-cv-02190-SHM-tmp |
| **NEXAIR, LLC,** ) ) | |
| Defendant. ) ) | |

**ORDER DENYING MOTION FOR A NEW TRIAL**

Before the Court is Plaintiff Michael Kelly's September 27, 2023 Motion for Judgment as a Matter of Law pursuant to Rule 50(b) and for a New Trial pursuant to Rule 59(a) (the "Motion"). (ECF No. 118.)  Defendant nexAir, LLC responded on October 23, 2023. (ECF No. 129.)  For the following reasons, the Motion is DENIED.

**I.     Background**

On January 3, 2023, Plaintiff filed an amended complaint, seeking damages for injuries he sustained as a delivery driver picking up items from Defendant's Memphis, Tennessee property. (ECF No. 27.)  Plaintiff alleged the following.  On September 20, 2018, his employer, BlueSky Couriers, Inc., dispatched him to Defendant's warehouse to pick up a delivery.  (Id. at 2-3, ¶¶ 9-11.)  The warehouse on Defendant's property had a door covered

in large, opaque plastic slats. (Id. at 4, ¶ 16.) Plaintiff walked up the ramp to the warehouse door, announced his presence, and had begun to look through the slats, when he was struck by a forklift backing down the ramp. (Id. at 5, ¶ 20.) Plaintiff fell backward off the loading dock three feet onto the pavement, breaking his clavicle and scapula and sustaining a traumatic brain injury. (Id. at 5, ¶¶ 21-22.) In the alternative, because Defendant alleged that the forklift did not hit Plaintiff, Plaintiff alleged that the forklift nearly struck him when he became startled and stepped backward off the loading dock. (Id. at 5, ¶ 21.)

There were no warnings alerting pedestrians that forklifts operated at the warehouse, and Defendant had an "accepted practice and custom" of allowing pedestrians to walk up the ramp to enter and exit the warehouse on foot. (Id. at 18-19.) Plaintiff alleged that Defendant's employee Cody Frazier drove the forklift negligently and recklessly, and that Defendant's practice of permitting pedestrians to walk up the ramp, although the door was covered in plastic blocking drivers' view, created a dangerous

2

condition that Defendant had an obligation to remedy.  (Id. at 4-6, ¶¶ 19, 24.)  Plaintiff brought claims of negligence, recklessness, and wanton conduct under Tennessee law, seeking compensatory and punitive damages.  (Id. at 8-13, ¶¶ 33-49.)

On August 15, 2023, the Court granted summary judgment on Plaintiff's punitive damages claim, finding that no reasonable jury could conclude that Defendant behaved recklessly.  (ECF No. 88.)  Plaintiff's negligence claim proceeded to trial.  (ECF Nos. 100, 106-08, 110-11.)  The trial lasted six days, and the jury returned a verdict in Defendant's favor on August 28, 2023.  (Id.; ECF No. 113.)

On September 25, 2023, Plaintiff filed the instant Motion. (ECF Nos. 116, 118.)  Defendant filed its response on October 23, 2023.  (ECF No. 129.)

**II.  Standard of Review**

Federal Rule of Civil Procedure 50(a) provides that:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law.  Fed R. Civ. P. 50(a)(1)(B).

3

A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. Id. at 50(a)(2). Under Rule 50(b), a party may file a renewed motion for judgment as a matter of law, asking the court to allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law. Id. at 50(b). A party may not make a Rule 50(b) motion if it has not previously made a Rule 50(a) motion. Hanover Am. Ins. Co. v. Tattooed Millionaire Entm't, LLC, 974 F.3d 767, 771 (6th Cir. 2020).

Federal Rule of Civil Procedure 59(a) permits a court to grant a new trial, on motion, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). A new trial should be granted if "required in order to prevent an injustice; and where an injustice will otherwise result." Park West Galleries, Inc. v. Hochman, 692 F.3d 539, 544 (6th Cir. 2012).

Trial courts have wide discretion to grant new trials. Bell v. Johnson, 404 F.3d 997, 1002 (6th Cir. 2005) (quoting Gasperini v. Ctr. for the Humanities, Inc., 518 U.S. 415, 433 (1996)). However, "[i]n considering a motion for a new trial on the ground that the verdict is against the weight of the evidence, the court is not to set aside the verdict simply because it believes another outcome is more justified." Denhof v. City of Grand Rapids, 494 F.3d 534, 543 (6th Cir. 2007); Mitchell v. Boelcke, 440 F.3d 300,

305 (6th Cir. 2006) (holding that a new trial was warranted where "absolutely no evidence" supported jury's verdict). A verdict should not be overturned unless it is one that no reasonable juror could have reached. Denhof, 494 F.3d at 543.

**III.    Analysis**

Plaintiff has moved for judgment as a matter of law under Rule 50(b) and for a new trial under Rule 59(a). Because Plaintiff failed to make a Rule 50(a) motion before the case was submitted to the jury, he is precluded from raising a Rule 50(b) motion now. Hanover Am. Ins. Co., 974 F.3d at 771; (ECF No. 134 at 46-56; No. 133 at 162-95). The Court will only assess Plaintiff's arguments for a new trial under Rule 59.

**A.    The Verdict Was Not Against the Weight of the Evidence**

To prevail at trial, Plaintiff had to show that (1) Defendant owed him a duty of care; (2) Defendant breached the applicable standard of care; (3) Plaintiff suffered an injury; (4) Defendant's conduct was a cause in fact of his injury; and (5) Defendant's conduct was a proximate cause of his injury. Turnage v. Oldham, 346 F.Supp.3d 1141, 1151 (W.D. Tenn. 2018); Parker v. Holiday Hospitality Franchising, Inc., 446 S.W.3d 341, 350 n.7 (Tenn. 2014). Plaintiff put forward three potential theories of negligence: (1) Frazier was negligent in his operation of the forklift; (2) nexAir was negligent in permitting forklift drivers and people on foot, such as delivery drivers, to work together on

5

site without adequate safety policies, as well as in its training and supervision of Frazier; and (3) nexAir was responsible for maintaining dangerous conditions on its premises. (ECF No. 24 at 8; No. 135 at 16.) To prevail on a theory of premises liability, Plaintiff also had to show that Defendant or its agent caused the dangerous condition or, if the condition was caused by someone else, that Defendant had actual or constructive notice of the condition before the accident. Parker, 446 S.W.3d at 350.

The parties did not dispute that Defendant owed Plaintiff a duty of care as a landowner which, under Tennessee law, has the duty of "reasonable care under all of the attendant circumstances." Black v. United Parcel Serv., 797 F.2d 290, 293 (6th Cir. 1986); Elliott v. Ill. Cent. R.R. Co., 560 F.Supp.3d 1132, 1142 (W.D. Tenn. 2021); Parker, 446 S.W.3d at 350. Landowners must "maintain the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired." Fenney v. Wal-Mart Stores East, LP, 441 F.Supp.3d 635, 639 (W.D. Tenn. 2020) (internal citations, quotation marks omitted); Parker, 446 S.W.3d at 350.

A reasonable jury could have found that Defendant did not breach its duty of care under any of Plaintiff's proposed theories. Denhof, 494 F.3d at 543. First, reasonable jurors could have found

6

that Plaintiff failed to show, by a preponderance of the evidence, that Frazier was negligent in operating the forklift. Frazier testified that he was looking over his shoulder as he backed out of the warehouse and had a clear view through the plastic slats. (ECF No. 132 at 112.) He testified that the forklift beeped automatically when it was in reverse -- although not when moving forward -- and that he also honked the horn multiple times. (Id. at 104, 142-43, 164-65.) This testimony was consistent with his description of events in an email he sent shortly after the accident, in which he wrote that he was honking his horn while backing down the ramp. (Id. at 117.)

Rik Anderson, a fellow BlueSky employee who witnessed the accident, also testified in Defendant's favor. Anderson testified that Frazier's forklift never struck Plaintiff, but that Plaintiff saw the forklift, panicked, and tripped backwards over the edge of the ramp. (ECF No. 133 at 101-01.) Anderson also testified that the forklift was beeping loudly enough that he could hear it from inside his car, 75 to 100 feet away. (Id. at 99-101.) He did not testify that he heard Frazier honk the horn. (Id.) Anderson's testimony was consistent with his email description of the accident, sent on September 23, 2018. (Id. at 102-03.)

Plaintiff offered evidence undermining Defendant's version of events. For example, Plaintiff testified that, while he was on the ramp, he heard the sound of a forklift beeping, but could not

7

tell how close it was and did not know whether it was moving around the warehouse or coming down the ramp. (ECF No. 137 at 44.) He testified that he approached the warehouse door and began to announce his presence, but was struck by the forklift before he could finish. (Id.)

Plaintiff elicited testimony from Anderson that the entire accident took place very quickly, that the forklift only beeped for about two seconds before Plaintiff began to trip and fall off the dock, and that everything occurred "almost simultaneously." (ECF No. 133 at 103, 133.) Plaintiff challenged Anderson's credibility by impeaching him with his deposition testimony. Plaintiff elicited testimony, for example, that during Anderson's deposition, he disparaged Plaintiff and called him names; believed the forklift was driving forward, not backward, down the ramp; and believed that Frazier's view was partially obstructed. (Id. at 112-13, 126, 158.) Plaintiff also reviewed the portion of Frazier's testimony in which he said that, in light of Plaintiff's accident, pedestrians should not be allowed on the ramp. (ECF No. 132 at 125-26.) Each party offered expert testimony supporting its version of events. (ECF No. 131 at 24-73; ECF No. 133 at 15-70.)

A reasonable juror could have drawn any number of inferences from the evidence. A juror could have found, for example, that Frazier was driving forward down the ramp and thus there were no

8

beeping noises warning pedestrians of his presence; that Frazier was driving backward, beeping and sounding his horn, but did so too quickly for someone in Plaintiff's position to move safely out of the way; or that Frazier was driving backward, beeping, and sounding his horn, and that Plaintiff's fall was caused by his own unreasonable reaction to the sight of the forklift. Any and all of these versions of events -- among others -- are plausible. The mere fact that Plaintiff's theory of the case was reasonable does not mean that the jury was unreasonable for rejecting it. Barnes v. City of Cincinnati, 401 F.3d 729, 743 (6th Cir. 2005) (holding that "the fact that the [losing party's] interpretation of the evidence is itself reasonable does not entitle it to a new trial"); Bondie v. Bic Corp., 947 F.2d 1531, 1535 (6th Cir. 1991) (holding that, "[i]n view of the fact that neither party produced overwhelming evidence to support its position, the verdict was not against the clear weight of the evidence.")  Plaintiff has not met his "onerous burden" of demonstrating that the verdict was against the clear weight of the evidence. Mitchell, 440 F.3d at 305.

Second, reasonable jurors could have found that Defendant did not breach its duty to Plaintiff by permitting forklift drivers and pedestrians to work together without adequate safety policies; by failing to train or supervise Frazier properly; or by maintaining dangerous conditions on its premises. Denhof, 494 F.3d at 543. Defendant offered the testimony of safety expert

9

James Stanley, who testified that Defendant's warehouse and forklift operations complied with all relevant Occupational Health and Safety Administration ("OSHA") standards. (Doc. 133 at 22); As You Sow v. AIG Fin. Advisors, Inc., 584 F.Supp.2d 1034, 1048 (M.D. Tenn. 2008) (collecting Tennessee cases holding that governmental and trade regulations can be used to determine the relevant standard of care).

Stanley testified that it is common for warehouses to allow pedestrians in areas where forklifts are operated, noting that Defendant complied with OSHA Standard 1910.178(1), governing pedestrian traffic in areas where vehicles are operated. (Doc. 133 at 23-24.) Stanley also testified that the forklift Frazier operated had safety features that went above and beyond OSHA's requirements, including a flashing light and alarm that went off when the forklift was backing up. (Id. at 26-27.)

Plaintiff called David Johnson as an expert witness, and he testified that, in his opinion, Defendant did not have the requisite safety measures in place. (Doc. 131 at 24-72). However, the jury was within its discretion to credit Stanley's testimony over Johnson's or to conclude, that given the conflicting expert opinions, Plaintiff did not prove his case by a preponderance of the evidence. Id.; see, e.g., Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1048 (6th Cir. 1996) (reversing a district court's order granting a new trial where the case depended on which witness

10

testimony the jury found more credible) ; see also Bondie, 947 F.2d at 1535 (holding that, because "neither party produced overwhelming evidence to support its position, the verdict was not against the clear weight of the evidence.")

Patrick Galphin, Defendant's director of facilities and project management, testified that all forklift operators had to receive training and certification before they could operate the machinery. (ECF No. 133 at 73, 77-78.)  He testified that the training materials instructed employees to stop and honk their horns before proceeding at any "corner, intersection, blind spot [or] doorway."  (Id. at 79.)  Frazier testified that he did not receive any specific training on what to do if he encountered a pedestrian while driving his forklift, but he did testify that he honked his horn while exiting the building.  (ECF No. 132 at 117, 186.)  Frazier also testified about the online training he received on forklift safety and explained that he was supervised on the forklift before receiving his certification.  (Id. at 53-54.)  The jury was within its discretion to credit Galphin's testimony or Frazier's or to conclude that, given any conflicts, Plaintiff had failed to prove his case by a preponderance of the evidence.  See, e.g., Holmes, 78 F.3d at 1048; see also Bondie, 947 F.2d at 1535.  The jury's verdict was not against the weight of the evidence.

### B.   Plaintiff is Not Entitled to a New Trial Because the Court Admitted Defendant's Demonstrative Video

Plaintiff argues that he is entitled to a new trial because the Court admitted Defendant's 13-second video of a forklift backing down a ramp at Defendant's warehouse. Plaintiff argues first that the Court erred in admitting the video because it was not timely disclosed under Fed. R. Civ. P. 26(a)(3). Rule 26(a)(3) requires parties to disclose all evidence that they may present at trial at least 30 days before trial begins. Here, both parties agree that the video was disclosed to Plaintiff about two weeks before it was presented at trial. (ECF No. 132 at 143.) Rule 26 requirements are subject to harmless-error analysis. Taylor v. TECO Barge Line, Inc., 517 F.3d 372, 378-79 (6th Cir. 2008); Amerisure Ins. Co. v. Ex-Cell-O Corp., No. 96-2082, 1998 WL 30817, at *4 (6th Cir. Jan. 22, 1998); PNC Equip. Fin. v. Mariani, 758 Fed. App'x 384, 390 (6th Cir. 2018). Here, the failure to provide Plaintiff with the video within the time designated by Rule 26(a)(3) was harmless. Plaintiff had two weeks to view and analyze the 13-second video. (ECF No. 132 at 143-57.) The events depicted in the video -- a forklift backing down a warehouse ramp -- were simple and not technically complex, and Plaintiff had sufficient notice of the video to prepare extensive objections about its contents. (Id.) Plaintiff is not entitled to a new trial because the video was not timely disclosed.

12

Second, Plaintiff argues that the video was not an accurate reenactment of his accident. (ECF No. 125 at 108-09.) Video demonstrations are admissible provided that they "bea[r] a reasonably close relationship to the underlying events in question," and any differences between the video and the relevant events are questions of credibility for the jury, rather than questions of admissibility. Amerisure, No. 96-2082 at *4. Here, however, Defendant did not introduce the video as a reenactment of Plaintiff's accident. Defendant introduced it to show a general layout of its property; what the forklift, warehouse, and ramp looked like; and how a forklift looks and sounds when backing up. (ECF No. 125 at 107.) The video showed that.

Plaintiff argued at trial, and argues now in his Motion, that the video of the forklift should have been excluded under Fed. R. Evid. 403 because it was unduly prejudicial and would mislead the jury. Fed. R. Evid. 403; (ECF Nos. 125 at 110; 116-1 at 8.) In particular, he objects to the fact that the forklift was moving at a slow speed in a straight line; beeped several times; that there was no background noise; and that the video appeared to be taken from the spot where Plaintiff was standing at the time of the accident. (ECF Nos. 125 at 107-110; 116-1 at 8.)

Any unfair prejudice or potential to mislead the jury was cured, however, by witness testimony. For example, before showing the jury the video, Defendant asked Frazier if it was a reenactment

13

of the accident. (ECF No. 125 at 114.) Frazier testified that it was not. (Id.) Although the forklift beeped multiple times in the video, Plaintiff elicited testimony from Anderson that it beeped for only two seconds, and that the whole accident happened so quickly that "you couldn't put your glasses on that fast." (ECF No. 133 at 103, 133.) Plaintiff elicited testimony from Defendant's Purchasing Manager Clinton Fritts that the forklift could go faster than five miles an hour. (ECF No. 132 at 218-19.) Fritts explained that drivers had discretion to use their own judgment in deciding how fast to go. (Id.) Frazier testified that he did not know how fast the forklift was going and that it had no speedometer. (Id. at 124.) Frazier also testified that he was backing down the ramp in a straight line. (Id. at 131, 135.) Frazier testified that he and Plaintiff were the only people in the area of the accident, but neither testified about whether the area was noisy. (Id. at 139.)

Given this testimony, it is unlikely that the jury was misled into believing that the video of the forklift was a reenactment of the circumstances of the accident. Rather, the parties made clear that all of the details about the accident -- including the speed of the forklift, its trajectory out of the warehouse, where the forklift and Plaintiff were located in relation to each other, how frequently the forklift beeped, and how loud it was -- were fact questions for the jury to answer based on the totality of the

14

evidence. Plaintiff is not entitled to a new trial because the Court admitted Defendant's video. Plaintiff is not entitled to a new trial on the basis that the Court should have issued a curative instruction because there was no error to cure.

### C. Plaintiff is Not Entitled to a New Trial Because the Court Denied a Spoliation Instruction

Under Fed. R. Civ. P. 51(d), a party may assign as error a failure to give a jury instruction, provided that party properly requested the instruction and objected to its omission. Fed. R. Civ. P. 51(d)(1). If a party has not properly preserved its objection to the jury instructions, the court may nonetheless review any challenges under a plain error standard, provided the error affects substantial rights. Id. at 51(d)(2); see also Teen Challenge Intern. v. Metro. Gov't of Nashville, No. 3:07-0668, WL 2151379 at *3 (M.D. Tenn. July 17, 2009).

The issue here is the absence of security camera footage. Plaintiff did not properly object to the Court's omission of a spoliation instruction addressing that absence. In fact, Plaintiff affirmatively withdrew his request for the instruction. (ECF No. 133 at 180.) That "intentional abandonment of [Plaintiff's] known right" constitutes waiver, and the Court does not review waived arguments. United States v. Akridge, 62 F.4th 258, 263 (6th Cir. 2023); United States v. Russell, 26 F.4th 371, 364 (6th Cir. 2022) (explaining that a party waives an issue by

15

"expressly abandon[ing]" the challenge) (internal quotation marks omitted).

The Court's omission of the spoliation instruction was not plain error. To prevail under a plain error standard, Plaintiff must show that the court committed a clear error affecting his substantial rights, and that failure to correct the error would "seriously affect the fairness, integrity, or public reputation of the judicial proceeding." Russell, 26 F.4th at 377-78. To obtain a jury instruction on spoliation of evidence, Plaintiff had to demonstrate that (1) Defendant had an obligation to preserve the evidence at the time it was destroyed; (2) the evidence was destroyed knowingly; and (3) the evidence destroyed was relevant to the case, such that a reasonable trier of fact could find that it would support Plaintiff's claim. Beaven v. U.S. Dep't of Just., 622 F.3d 540, 553 (6th Cir. 2010). The Court did not plainly err in denying the spoliation instruction, because Plaintiff did not demonstrate the existence of any relevant security camera footage. Id.

The parties disputed how many, if any, security cameras were on Defendant's property, as well as the cameras' functionality and range of vision. (ECF Nos. 136 at 126-33; 132 at 9-45.) Galphin testified that there was only one operational security camera on Defendant's property on the date of Plaintiff's accident and that it was in the employees' parking lot. (ECF No. 136 at 131.)

16

Galphin conceded, however, that there was a sign on Defendant's property claiming that it was under 24-hour video surveillance. (Id. at 129.) Plaintiff elicited testimony that Galphin had previously testified, during his deposition, that no other cameras "ever existed" on the premises, but Galphin clarified at trial that he "took [the] question to mean" that there were no "operational cameras" on the premises. (Id. at 127.) Plaintiff also presented evidence that Frazier testified, in his deposition, that there was "definitely" a security camera on one of the warehouse buildings. (ECF No. 132 at 183-84.) Fritts testified, however, that he did not remember ever seeing a camera in that location. (Id. at 214.)

This evidence is far from establishing that Defendant destroyed video footage of Plaintiff's accident, such that denying a spoliation instruction was "so rank" an error that it "should have been apparent to the trial judge without objection." United States v. Henning, 286 F.3d 914, 921 (6th Cir. 2002). The only evidence Plaintiff offered that there was a security camera at the scene of the accident was Frazier's deposition testimony. Frazier did not testify about whether the cameras were functional and recording, or speculate about how long any recorded footage was stored. That, along with the argument that Galphin's testimony was contradictory, was insufficient to establish that Defendant

17

destroyed inculpatory surveillance footage. The Court did not plainly err by denying a spoliation instruction.

**IV.   Conclusion**

For the reasons above, Plaintiff's Motion for a New Trial is DENIED.

So ordered this 14th day of December, 2023.

*/s/ Samuel H. Mays, Jr*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE